IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DENNIS SNYDER and
AUDRA SNYDER,

                Plaintiffs,

vs.                              No. 08-4094-SAC

THE AMERICAN KENNEL CLUB,

                Defendant.

**MEMORANDUM AND ORDER**

This removed case comes before the court on the plaintiffs' motion for a preliminary injunction. Plaintiffs, Kansas residents, are professional dog show handlers whose American Kennel Club (AKC) privileges have been suspended for a period of ten years.

**Procedural Background**

On April 3, 2007, the AKC charged both plaintiffs with animal cruelty relating to a dog called "Jag," stating:

> On or about May 28, 2005, [they] failed to seek or provide appropriate medical attention to a Golden Retriever ... which was in his/her care at the time in a manner that would constitute cruelty as defined by the AKC while at the Muskogee Kennel Club Dog Show.

Exh. C1, C2. The AKC defines animal cruelty as "Conscious action or

inaction that may endanger life or cause serious health consequence to animals." Exh. C1.

Dennis Snyder was additionally charged with neglect for having left Jag on a grooming table "without providing appropriate supervision to preclude the dog from being injured in a manner that would constitute neglect." The AKC defines neglect as "inadequate care or voluntary inattention to basic needs, ignoring the safety and well-being of animals because of haste or ignorance. Exh. C1.

Plaintiffs do not dispute that they received adequate notice of the charges against them, that an attorney of their choice represented them at the hearing, that the hearing was held in Topeka at their request, that the hearing consisted of two days of testimony and exhibits, that the witnesses were under oath, that a transcript of the hearing was taken, and that other indicia of judicial proceedings were present.

At the hearing, conflicting testimony was presented. Allegations against the plaintiffs included: 1) Dennis Snyder had left Jag on a grooming table in a harness or other restraint, then left to show another dog in the ring: 2) Jag then jumped or fell off the table and was injured; 3) both plaintiffs learned of his injuries but failed to given him any medical

attention; and 4) plaintiffs attempted to cover up the table incident and told others that Jag was lost a few days after the table incident. All parties agree that Jag was never returned to his owner. Other testimony was to the effect that leaving dogs unattended on grooming tables is not uncommon, and that when Jag fell or jumped off the table his harness hanged him to death so that no medical care was possible.

On June 14, 2007, the Northwest Trial Board of the AKC found that Audra Snyder had committed animal cruelty, stating:

> [The Snyders'] testimony is not credible. Defendant Audra Snyder did conduct herself in a manner prejudicial to the best interests of purebred dogs, purebred dog events and/or the American Kennel Club as [charged].

Exh. E. The Trial Board imposed the AKC's standard penalty for the offense of cruelty, suspending her privileges to show dogs at AKC events for ten years. Similarly, the Trial Board found Dennis Snyder had committed animal cruelty and was negligent, and suspended his privileges to show dogs at AKC events for ten years, stating:

> [The Snyders'] testimony is not credible. Defendant Dennis Snyder did conduct himself in a manner prejudicial to the best interest of purebred dogs, purebred dog events and/or the American Kennel Club as [charged].

Exh. F.

The Snyders appealed the Trial Board's decisions, but their suspensions were unanimously affirmed on September 10, 2007, by the AKC Appeals Board. The Appeals Board issued specific findings, including that Audra Snyder "was guilty of cruelty in not seeking medical care" for the dog after it was injured. Exh. K. Similarly, the Appeals Board found that Dennis Snyder "was guilty of cruelty in not seeking medical care" for the dog after it was injured, and that "the manner in which "Jag" was left in the rig was clearly negligence." Exh. L.

On July 30, 2008, over ten months later, the plaintiffs filed suit in Shawnee County, Kansas, seeking judicial review of the AKC disciplinary action. The suit alleged a violation of plaintiffs' common law due process rights under New York law, arbitrary and capricious evidentiary findings by the AKC, and libel due to the AKC's publication of their suspension. On August 8, 2008, the state court issued an *ex parte* TRO of unlimited duration, citing the allegedly erroneous findings of the AKC, and the harm of plaintiff's past and future lost income of $200,000 per year. The TRO did not mention any claim of defamation or damage to reputation. The TRO restrained the AKC from enforcing its suspensions against the plaintiffs.

The same day that the TRO issued, the AKC removed the case to

this court on the basis of diversity jurisdiction and filed a motion to dissolve the TRO. After a hearing held on August 19, 2008, this court granted defendant's motion to dissolve the TRO, and set a hearing date for plaintiffs' motion for a preliminary injunction.

The day before the preliminary injunction hearing, plaintiffs filed an amended complaint, seeking punitive damages and stating four causes of action: 1) intentional interference with "contract rights"[1] under Kansas law, because the AKC failed to follow its own rules pertaining to discipline by not having the Event Committee initially investigate the incident;  2) intentional interference with "contract rights" under Kansas law because the AKC's decision as to Dennis Snyder was not supported by substantial competent evidence; 3) intentional interference with "contract rights" under Kansas law because the AKC's decision as to Audra Snyder was not supported by any evidence; and 4) libel, based on defendant's publication of its decision to suspend plaintiffs from all AKC privileges.

On August 27, 2008, the hearing was held on plaintiffs' motion for

---

[1] It is unclear to the court whether plaintiffs' vague reference to a violation of their "contract rights" is a strategic attempt to preserve claims for the torts of breach of an existing contract and for breach of prospective business advantage.

preliminary injunction. At that hearing, the parties called no live witnesses, but submitted numerous joint exhibits for the court's consideration and made oral arguments. The court took the motion under advisement at the close of that hearing. Having reviewed the parties' briefs, the relevant exhibits and the controlling law, the court is ready to rule.

**Preliminary Injunction Standard**

A preliminary injunction is an extraordinary remedy. *See Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1258 (10th Cir.2005). The main purpose of a preliminary injunction is to preserve the status quo pending a final resolution of the matter during the pendency of an action. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980). The movant has the burden to meet the following requirements for issuance of a preliminary injunction:

> (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harms that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.

*Wilderness Workshop v. U.S. Bureau of Land Management*, 531 F.3d 1220, 1224 (10th Cir. 2008). A party seeking a preliminary injunction must make its case not by mere allegations, but by clear proof. *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir.1975).

Defendant contends that this Court should apply the more stringent standard applied to disfavored injunctions. These "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir.2004). In this Circuit, there are three types of specifically disfavored preliminary injunctions:(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits. *Schrier* , 427 F.3d at 1259.

Defendant contends that the injunction is disfavored because it would alter the status quo since plaintiffs' suspension has been in place for eleven months before suit was filed. The status quo, however, is "the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *SCFC*, 936 F.2d at 1100 n. 8, and does not "invariably include the last status immediately before the filing for injunctive relief." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001). "In determining the status quo for preliminary injunctions, this court looks to the reality of the existing status

7

and relationship between the parties and not solely to the parties' legal rights." *Id.* Here, the last uncontested status between the parties which preceded the controversy was when the plaintiffs were permitted to show dogs prior to their suspension. *See Schrier,* 427 F.3d at 1260. The plaintiffs' request that their privileges be restored thus seeks to preserve rather than disturb the status quo.

Defendant additionally notes that the injunction is disfavored because it seeks mandatory relief in that it would require the AKC to allow the plaintiffs to participate fully in its events while this litigation is pending. The Tenth Circuit characterizes an injunction as mandatory if the requested relief "affirmatively require[s] the nonmovant to act in a particular way, and as a result ... place [s] the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." *O Centro,* 389 F.3d at 979 (quoting *SCFC ILC, Inc.*, 936 F.2d at 1099). The court does not believe that the relief sought here is properly characterized as mandatory because the court would not have to supervise the AKC to make sure that it permits plaintiffs to show dogs. The AKC has already lifted its suspension and permitted the plaintiffs to show dogs, without court supervision, during the period that the state court TRO was in

effect. Accordingly, the court does not believe that the plaintiffs seek a specifically disfavored injunction or that application of the heightened standard is warranted.

**Irreparable harm**

The court first examines whether the plaintiffs have shown irreparable harm.

> Courts have consistently noted that '[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.

*Dominion Video Satellite v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260-61 (10th Cir. 2004) (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990).

Plaintiffs originally alleged that irreparable harm consisted of their loss of income caused by the AKC's suspension of their privileges to show dogs, which they estimated to be $200,000 per year. "It is ...well settled that simple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). Plaintiffs' counsel conceded during the hearing that his clients' lost income

between the date of this order and the date of a decision on the merits of the case can likely be compensated after the fact by monetary damages, and is thus not irreparable.

Plaintiffs now contend that injury to their reputations as professional dog show handlers caused by defendant's suspension constitutes irreparable harm. Plaintiffs focus upon the fact that there is no mathematical formula by which a jury can calculate damages to one's reputation. *See* Dk. 22, p. 19, citing *Tri-State Generation & Transmission Ass's v. Shoshone River Power, Inc.*, 874 F.2d 1346 (10th Cir. 1989). Nonetheless, the court is aware that juries routinely award monetary damages for such items as pain, suffering, and loss of reputation, despite the absence of a precise formula by which to do so.

In certain circumstances, damage to one's business reputation may constitute irreparable harm,. See e.g., *Flying Cross Check, L.L.C. v. Central Hockey League, Inc.*, 153 F.Supp.2d 1253, 1259 (D.Kan. 2001); *Zurn Constructors, Inc. v. B.F. Goodrich Co.*, 685 F.Supp. 1172, 1181 (D.Kan.1988); *Fireworks Spectacular, Inc. v. Premier Pyrotechnics, Inc.*, 86 F.Supp.2d 1102, 1108 (D.Kan. 2000). *But see Sampson v. Murray*, 415 U.S. 61, 89-92, 94 S.Ct. 937, 952-954, 39 L.Ed.2d 166 (1974) (finding that,

in general, damage to reputation "falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction," absent "extraordinary circumstances.") In such cases, however, damage to one's business or reputation is not presumed, but must be proved to some extent during the preliminary injunction hearing. *See e.g.*, *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1157 (10th Cir. 2001) (testimony as to damage to reputation); *Flying Cross Check, L.L.C.,*153 F.Supp.2d at 1259 (affidavit as to damage to reputation and goodwill); Zurn Constructors, Inc.  685 F.Supp. at 1181-82 (evidence as to reputation). "Speculative harm does not amount to irreparable injury." *Schrier,* 427 F.3d at 1267 (10th Cir.2005) (finding loss of reputation not irreparable where plaintiff provided no evidence of risk of loss of prestige, academic reputation, or professional opportunities that could not be remedied by money damages.) To constitute an irreparable harm, an injury must be certain, great, actual 'and not theoretical.' " *Heideman*, 348 F.3d at 1189 (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C.Cir.1985)).

Plaintiffs did not offer any evidence whatsoever that their reputations have been damaged by defendant's acts, or that their business existence is

threatened by their suspension. To the contrary, the exhibits show the court that the AKC suspended Dennis Snyder for five years in 1998, Exh. C-22, but he alleges that he thereafter made approximately $200,000 a year showing dogs. No inference thus arises from the evidence that a lengthy suspension by the AKC will necessarily put a dog handler out of business. The court is not persuaded that the difficulty in ascertaining the amount of plaintiffs' damages would prevent an effective monetary remedy after a full trial.

In addition, to warrant a preliminary injunction, the harm must be "of such imminence that there is a clear and present need for equitable relief...." *Id.* (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir.2001). Plaintiffs delayed in bringing suit for over ten months after their suspension by the AKC became final. To date, plaintiffs have offered no justification or reason for this delay, despite several briefs and pleadings filed by plaintiffs' counsel, and oral arguments of the motion to dissolve the TRO and of the motion for preliminary injunction. This unexplained delay weighs against a claim that urgent relief is warranted. *See GTE Corp. v. Williams*, 731 F.2d 676, 679 (10th Cir.1984); *Hodgdon Powder Co., Inc. v. Alliant Techsystems, Inc.*, 2006 WL

2092391 (D. Kan. 2006) (eight month delay). Plaintiffs have failed to show they will suffer irreparable harm in the absence of a preliminary injunction.

**Probability of Success**

The court additionally finds that likelihood of success on the merits has not been shown. Assuming, without deciding, that plaintiffs' pleading of their libel claim is sufficient under Rule 8(a),[2] the substantive elements of that claim are governed by Kansas law. Considering the elements of this defamation claim, as well as the defenses of truth and qualified privilege, the court is not convinced that recovery by the plaintiffs is sufficiently likely to warrant a preliminary injunction.[3] *See Hall v. Kansas Farm Bureau*, 274 Kan. 263, Syl. ¶ 4, 50 P.3d 495 (2002); *Ruebke v. Globe Communications Corp.*, 241 Kan. 595, 598, 738 P.2d 1246 (1987); *Hein v. Lacy*, 228 Kan. 249, 261, 616 P.2d 277, 285 (1980); *Guilfoyle v. The American Kennel Club*, No. 75-175-C6 , Dk. 8, Exh. 2; *Luttrell v. United Telephone System, Inc.*, 9 Kan.App.2d 620, 622, 683 P.2d 1292 (1984), *aff'd* 236 Kan. 710,

---

[2]The sufficiency of a complaint alleging defamation under Kansas law is judged under rule 8(a) instead of under Kansas pleading standards. *See Bushnell Corp. v. ITT Corp.*, 973 F.Supp. 1276, 1287 (D.Kan.1997).

[3]The exhibits do not include a copy of the AKC's notice of plaintiffs' suspension. For the court to find that plaintiffs are probable winners on this claim would be merely speculative.

13

695 P.2d 1279 (1985); *High v. A.J. Harwi Hardware Co.*, 115 Kan. 400, 405, 223 P. 264 (1924).

As to plaintiffs' remaining claims, *i.e.*, that the decision of the AKC was procedurally and substantively erroneous and thus violated plaintiffs' "contract rights" under Kansas law, judicial intervention in the affairs of private associations is limited, even where the suspension is by a trade or professional organization which has virtual monopoly power over a profession and where there is a showing of "economic necessity" for membership. *See Lindemann v. Am. Horse Shows Ass'n*, 624 N.Y.S.2d 723, 729, 222 A.D.2d 248 (Sup. Ct. 1994); *Jacobson v. N.Y. Racing Ass'n*, 33 N.Y.2d 144, 305 N.E. 2d 765 (1973); *Weiskopf v. American Kennel Club*, 2002 WL 1303022, p. 11 (EDNY June 11, 2002). Thus the court will determine only whether a right to common law due process existed and was violated by the AKC's procedures, and whether the substantive decision of the AKC was arbitrary and capricious rather than a reasonable discretionary business judgment. The court cannot review the AKC's decision de novo, reweigh the evidence, or second guess the AKC's credibility determinations.

The court finds it unnecessary at this point to engage in a detailed

analysis of the evidence admitted at the AKC's hearing. The court's restrictive standard of review, the conflicting testimony presented at the AKC hearing which entailed credibility judgments, and the additional elements of interference with contract or interference with prospective business advantage which plaintiffs have recently pled and must therefore prove, lead the court to find insufficient likelihood of success on the merits of the claims to support a preliminary injunction.

Given the findings above, the court finds it unnecessary to address the public interest and the balance of harms.

IT IS THEREFORE ORDERED that plaintiffs' motion for preliminary injunction (Dk. 8) is denied.

Dated this 9th day of September, 2008.

                                              s/ Sam A. Crow
                                              Sam A. Crow, U.S. District Senior Judge